UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROSHANAK ROSHANDEL; VAFA GHAZI-MOGHADDAM; HAWO AHMED; LIN HUANG; AHMAD ALKABRA; MOHAMMAD REZA AIDINEJAD, and ZAHRA ABEDIN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL CHERTOFF, Secretary, United States Department of Homeland Security; EMILIO GONZALEZ, Director, United States Citizenship and Immigration Services, ANN CORSANO, Director, District 20, United States Citizenship and Immigration Services; JULIA HARRISON, Director, Seattle Field Office, United States Citizenship and Immigration Services; MICHAEL B. MUKASEY, Attorney General, United States Department of Justice; ROBERT MUELLER III, Director, Federal Bureau of Investigation; and the UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. C07-1739MJP<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION |

This matter comes before the Court on Plaintiffs' motion for class certification. (Dkt. No. 4.) Defendants filed a response to the motion (Dkt. No. 15) and Plaintiffs filed a reply (Dkt. No. 16). Having considered the parties' briefs and all documents submitted in support, and having heard oral argument on the issues, the Court GRANTS Plaintiffs' motion for class certification.

ORDER — 1

**Background**

This action involves delayed naturalization applications allegedly due to a pending "name check" with the Federal Bureau of Investigation ("FBI"). Plaintiffs are lawful permanent residents of the United States who have applied with the United States Citizenship and Immigration Services ("USCIS") to be naturalized as United States citizens. Defendants are Michael Chertoff, Secretary of the United States Department of Homeland Security; Emilio Gonzalez, Director of USCIS; Ann Corsano, Director of USCIS District 20; Julia Harrison, Director of the USCIS Seattle Field Office; Michael B. Mukasey, United States Attorney General; Robert Mueller III, Director of the FBI; and the United States of America.

Each Plaintiff's application has been pending for at least two (2) years since passing his or her naturalization examination. (Dkt. No. 21, First Amended Complaint [hereinafter "Compl."] ¶ 2.) Plaintiffs Roshandel, Ghazi-Moghaddam, Ahmed, Huang, Alkabra, and Abedin were each told by USCIS that their applications were not yet complete due to a pending name check. (Id. ¶¶ 11, 16, 21, 26, 29, and 34.) Plaintiffs allege that they have met all legal requirements for naturalization. (Compl. ¶ 2.)

**I.     The Naturalization Process**

Persons seeking naturalization must submit an application to USCIS, the agency responsible for adjudicating naturalization applications. See 8 U.S.C. § 1445; 8 C.F.R. § 100.2(a)-(f); 6 U.S.C. § 291 (abolishing the INS). A naturalization applicant must meet certain requirements under the Immigration and Naturalization Act ("INA"), including an understanding of the English language and history of the United States, and good moral character. 8 U.S.C §§ 1423, 1427. USCIS is required to grant the application if the applicant meets all statutory requirements for naturalization. 8 C.F.R. § 335.3(a).

Once an application is submitted, USCIS conducts an investigation of each naturalization applicant. See 8 U.S.C. § 1446(a); 8 C.F.R. § 335.1. Under USCIS regulations, the investigation includes a "full criminal background check" performed by the FBI. 8 C.F.R. § 335.2(b). USCIS

ORDER — 2

1  cannot adjudicate any naturalization application without a "definitive response" from the FBI that
2  a full criminal background check has been completed. Id.  USCIS also conducts a naturalization
3  interview, at which an applicant meets with a USCIS officer who asks questions and takes
4  testimony. 8 C.F.R. §§ 335.1, 335.2(a).  At the interview, the USCIS officer is required to inform
5  the applicant of the remedies available to the applicant under section 1447(b). 8 U.S.C. § 1446(b).
6  Under USCIS regulations, applicants are supposed to be interviewed only after the FBI has
7  completed its full background check. 8 C.F.R. § 335.2(b).[1]

8       The regulations require that USCIS make a decision to grant or deny the application either
9  at the initial examination or within 120 days of the date of the initial examination. See 8 C.F.R. §
10  335.3(a) ("A decision to grant or deny the application shall be made at the time of the initial
11  examination or within 120-days after the date of the initial examination of the applicant for
12  naturalization under § 335.2.").  If USCIS fails to render a decision on a naturalization application
13  within 120 days of the applicant's naturalization examination, the applicant may seek district court
14  adjudication of his or her application. 8 U.S.C. § 1447(b).  The court may either determine the
15  application, or remand the application to the agency with instructions. Id.  Once a plaintiff has
16  filed a petition under section 1447(b), the district court assumes exclusive jurisdiction over the
17  naturalization application. United States v. Hovsepian, 359 F.3d 1144, 1161 (9th Cir. 2004).

18  **II.    The Name Check Requirement**

19       Plaintiffs allege that in 2002, without promulgating any regulations and without statutory
20  authorization, USCIS "dramatically altered the naturalization process by requiring that all

---

[1] Contrary to USCIS's own regulations, members of the proposed class were all interviewed prior to the completion of their full background check.  Apparently, USCIS now waits until background investigations are complete before conducting an applicant's examination interview. Stepchuk v. Gonzales, No. C06-570RSL, 2006 WL 3361776, *5 n. 6 (W.D. Wash. Nov. 17, 2006) (C.J. Lasnik) (noting that, "perhaps in response to the growing number of lawsuits that have resulted from the combination of lengthy background checks and [US]CIS's deviation from the course of action dictated in its regulation, the agency recently declared its renewed intention to conduct examinations only after receiving the results of an applicant's criminal background check").  The proposed class is therefore a shrinking one.

applicants pass a 'name check' by the FBI before final approval." (Compl. ¶ 40.) According to the complaint, a name check is a search of FBI records and other records the FBI has access to based on the name of the applicant. (Id.) Plaintiffs allege that the name check is implemented in such a manner that an applicant may be erroneously identified as a "person of interest" to the FBI, thereby delaying adjudication of the naturalization application, even though the applicant has committed no crimes and is not a suspect, and even though the name check revealed no other information bearing on eligibility for naturalization. (Compl. ¶ 50.) Plaintiffs further allege that USCIS will not grant naturalization applications until it receives a completed background check from the FBI, and that neither USCIS nor the FBI has imposed any timeline for completion of the name checks. (Compl. ¶ 52.)

**III.     The Class Action Complaint**

Plaintiffs' complaint states four causes of action: (1) right to judicial determination of Plaintiffs' naturalization applications pursuant to 8 U.S.C. § 1447(b); (2) unreasonable delay in violation of the Administrative Procedure Act ("APA"), 8 U.S.C. § 555(b); (3) failure to follow notice-and-comment requirements of the APA, 8 U.S.C. § 553; and (4) failure to provide notice of remedies as required by 8 U.S.C. § 1446(b).[2] Plaintiffs now move to certify a class comprised of the following members:

> All lawful permanent residents of the United States residing in the Western District of Washington who have submitted naturalization applications to [US]CIS but whose naturalization applications have not been determined within 120 days of the date of their initial examination due to the pendency of a "name check."

**Discussion**

**I.     Standing**

Standing is a jurisdictional element that must be satisfied prior to class certification. Lee v. State of Oregon, 107 F.3d 1382, 1390 (9th Cir. 1997). In order to assert claims on behalf of a class, "a named plaintiff must have personally sustained or be in immediate danger of sustaining

---

[2] Plaintiffs' claim under Count Four, Failure to Provide Notice of Remedies, is applicable only to a proposed subclass. Plaintiffs do not ask the subclass to be certified at this time.

ORDER — 4

'some direct injury as a result of the challenged statute or official conduct.'" Armstrong v. Davis, 275 F.3d 849, 860 (9th Cir. 2001) (quoting O'Shea v. Littleton, 414 U.S. 488, 494 (1974)). "The harm suffered by a plaintiff must constitute 'actual injury.'" Id. (quoting Lewis v. Casey, 518 U.S. 343, 348-49 (1996)).

The Government argues that Plaintiffs fail to demonstrate actual harm because there is no right to naturalization until all the statutory requirements are met. Not only does this argument assume that the name check is a statutory requirement, which is itself at issue in this litigation, but it ignores the fact that under 8 C.F.R. § 335.3(a) and 8 U.S.C. § 1447(b), Plaintiffs are entitled to a naturalization decision by USCIS within 120 days of their naturalization examination. Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute. See Warth v. Seldin, 422 U.S. 490, 514 (1975). Thus, even assuming that Plaintiffs do not have a right to naturalization, that does not mean they do not have a right to a prompt adjudication of their naturalization application. Plaintiffs, each deprived a naturalization decision within 120 days of their interview, are injured by the delay itself and have standing to enforce that right.

Plaintiffs also allege injuries beyond the delay itself, injuries that are a direct result of the challenged name check policy. Plaintiffs state in their complaint that they are unable to vote or serve on juries, they are unable to travel abroad without fear of being denied re-entry into the United States, and they are ineligible for jobs for which they are qualified. (Compl. ¶ 3.) In an ill-considered argument, the Government suggests that the inability to vote is not a harm sufficient to confer standing:

> With respect to voting, simply because Plaintiffs are not United States citizens does not mean that they are unable to participate in civic society. The inability to vote does not render someone apolitical. Should a person sincerely be interested in politics, he or she can still participate in the political process by assisting with campaigns, attending political functions or providing monetary donations, and he or she may do so freely.

(Defs.' Opp. at 8.) This suggestion that Plaintiffs should be resigned to participate vicariously in

ORDER — 5

civic society is shocking, offensive, and wrong. It echoes the sentiments of those who challenged women's suffrage, suggesting that women should be content to participate in the political process vicariously through their husbands' votes.

> We might as well be dogs baying the moon as petitioners without the right to vote!

Susan B. Anthony, speech on November 16, 1895 (as quoted in The Life and Work of Susan B. Anthony, ch. 44, by Ida Husted Harper (1898) (reprinted in The Columbia World of Quotation (Columbia University Press, 1996))), available at www. bartleby.com/br.66.html (last visited April 25, 2008).

The Government's argument also flies in the face of the Supreme Court's repeated conclusion that the right to vote is the most basic and fundamental of our constitutionally protected rights: "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." Wesberry v. Sanders, 376 U.S. 1, 17 (1964).

Rightfully, the Government does not even attempt to argue that the inability to serve on juries does not cause harm. See Powers v. Ohio, 499 U.S. 400, 407 (1991) ("With the exception of voting, for most citizens the honor and privilege of jury duty is their most significant opportunity to participate in the democratic process."). The Government does argue, however, that the difficulties Plaintiffs have experienced with travel are either individual-specific or no worse than those suffered by American citizens in a post-9/11 world. Two named Plaintiffs specifically allege that they experience increased scrutiny when traveling due to their immigration status. (Compl. ¶¶ 12 and 17.) Moreover, a lawful permanent resident who remains abroad for more than a temporary period may be refused re-admission to the United States. See 22 C.F.R. § 42.22. The Court rejects the Government's argument that the difficulties Plaintiffs experience in traveling is immaterial — taking off one's shoes pales in comparison to not being able to return

ORDER — 6

to one's home. All of these factors — the inability to vote, inability to serve on juries, and difficulty traveling — are harms sufficient to confer standing.

Finally, in a case such as this one, where class plaintiffs seek prospective injunctive relief, they must also demonstrate that they are realistically threatened by a repetition of the alleged violation." Armstrong, 275 F.3d at 860 (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983)). Plaintiffs may show that injury is likely to recur by demonstrating that the harm is part of a "pattern of officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights." Id. at 861 (quoting LaDuke v. Nelson, 762 F.2d 1318, 1323 (9th Cir. 1985)). "Thus, where the defendants have repeatedly engaged in the injurious acts in the past, there is a sufficient possibility that they will engage in them in the near future to satisfy the 'realistic repetition' requirement." Id.

Here, the existence of a policy and practice of delay in naturalization applications due to pending name checks is not reasonably in dispute.[3] Plaintiffs, for their part, have alleged delay-based injuries stemming directly from this name check requirement, including their inability to vote and to serve on juries, their inability to travel abroad without fear of being denied re-entry into the United States, and ineligibility for jobs for which they are qualified. (Compl. ¶ 3.) Thus, the Court concludes that the existence of the name check policy within USCIS means that unnamed and future class members will face contested delays in the future, be it before the completion of the naturalization interview or after. Plaintiffs have standing to bring their class claims.

**II.   Mootness**

After Plaintiffs moved for class certification, the FBI completed the name checks of the four named plaintiffs and USCIS announced that it was ready to immediately adjudicate their

---

[3] In the last year, approximately 31 claims against USCIS for delayed naturalization applications due to a pending name check heard before this Judge alone. See e.g., Abo Ghanim v. Gonzales, No. C07-0594MJP, 2007 WL 2712387 (W.D. Wash. Sept. 14, 2007) (adjudication of naturalization application delayed because of pending name check); Said v. Gonzales, No. C06-986MJP, 2006 WL 2789344 (W.D. Wash. Sept. 24, 2007) (same).

ORDER — 7

naturalization applications. Defendants then opposed class certification, in part, on the grounds that Plaintiffs claims were moot. Plaintiffs have since filed an amended complaint (Dkt. No. 21) adding three additional named plaintiffs whose name checks have not been completed.[4] Because three of the named plaintiffs' claims present live controversies, their claims are not moot, and the modification in class representation has no effect on the viability of the class as a whole. See Swisher v. Brady, 438 U.S. 204, 213 (1978) (holding that a live controversy remained, and a class was properly certified, where the adversity between the defendant and all but one of the named plaintiff had been mooted). In addition, the Court notes that subsequent resolution of remaining named plaintiffs' claims following certification of this class will not moot this class action. See County of Riverside v. McLaughlin, 500 U.S. 44, 52 (1991) (holding that the mootness of named plaintiffs does not defeat class claims where unnamed class members continued to present justiciable claims and where the class has already been certified under Rule 23); Sosna v. Iowa, 419 U.S. 393, 399-400 (1975). The three new named plaintiffs may represent the class.

**III.    Class Certification Standard**

Class actions are governed by Federal Rule of Civil Procedure 23. The party seeking class certification bears the burden of demonstrating that he or she has met all four requirements in Rule 23(a) and at least one of the requirements of Rule 23(b). Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001). Although the trial court has broad discretion in deciding whether to certify a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has satisfied all the necessary Rule 23 elements. Id. To satisfy subsection (a), Plaintiffs must show that (1) the class is so numerous that joinder of all members is impracticable ("numerosity"), (2) there are questions of law or fact common to

---

[4] Since oral argument, the Government has requested permission to apprise the Court of the status of the name checks for the remaining named plaintiffs. Because that request to consider additional material does not ripen until May 9, 2008, the Court has not yet ruled on whether to consider the additional material and so does not consider it here.

ORDER — 8

the class ("commonality"), (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"), and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a). Plaintiffs must also satisfy one of the elements in subsection (b). Here, Plaintiffs argue that they satisfy (b)(2), which provides as follows:

> [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed. R. Civ. P. 23(b)(2).

**IV.   Rule 23(a)**

The Government argues that Plaintiffs have not shown commonality, typicality, or adequacy of representation. The Government does not dispute that the class as defined is so numerous that joinder is impracticable.

   **1.     Commonality and Typicality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "'All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.'" Staton v. Boeing, 327 F.3d 938, 953 (9th Cir. 2003) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir.1998)). Courts have found that this element can be met by raising a single common issue that is central to the class. See Slaven v. BP America, Inc., 190 F.R.D. 649, 655 (C.D. Cal. 2000). Here, all Plaintiffs' naturalization applications have been delayed because of the FBI name check, and all Plaintiffs challenge the legality of the delayed adjudication. Because all Plaintiffs, whether present or future members of the class, challenge the legality of the same government program, they inherently share common issues. See LaDuke, 762 F.2d at 1332 (holding that case challenging the constitutionality of an INS procedure "plainly" created common questions of law and fact).

ORDER — 9

Defendants concede that there are "some common issues of law and fact," but suggest that, because "individual issues predominate" in the inquiry into whether adjudication delay is reasonable and in the naturalization decision itself, class treatment is improper. (Opp. Mot. at 14-15.) This is not an appropriate factor to consider on a motion for 23(b)(2) certification: "Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2)." Walters v. Reno, 145 F..3d 1032, 1047 (9th Cir. 1998) (rejecting defendants' argument that factual distinctions in plaintiffs' cases undermined common allegations that INS procedures provide insufficient notice). Moreover, as Plaintiffs explained at oral argument, they do not seek naturalization of the class as a whole. Whether Plaintiffs meet the individual requirements for naturalization and whether individual factors caused the delay in adjudication is irrelevant to class certification in this case.

Defendants also argue that the time taken to complete background checks is "reasonable" and that the FBI name check is not the sole reason for delay. However, the reasonableness and legality of Defendants' policies and practices are not matters for the Court to consider on a motion for class certification. See Eisen v. Carlisle, 417 U.S. 156, 177-78 (1974) (improper for court to consider merits in denying motion for class certification). The Court finds that Plaintiffs have satisfied the commonality requirement.

In regards to the typicality element, "a plaintiff's claims are typical if they arise from the same event or practice or course of conduct that gives rise to the claims of other class members and are based on the same legal or remedial theory." 1 Alba Conte & Herbert Newberg, Newberg on Class Actions § 3:19, at 401 (4th ed. 2002); see also Alpern v. Utilicorp United, Inc., 84 F.3d 1525, 1540 (8th Cir. 1996). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1184 (9th Cir. 2007) (quoting Hanlon, 150 F.3d at 1020). Here, the claims of the named plaintiffs are typical of those of the class because all of the potential plaintiffs suffered delayed naturalization

ORDER — 10

1  adjudications due to the name check requirement. Any differences in the length of delay or
2  subsequent consequences are immaterial for purposes of class typicality, which is concerned with
3  the class members' shared interests and harms. See generally General Telephone Co. of the
4  Southwest v. Falcon, 457 U.S. 147, 156 (1982). Plaintiffs have satisfied the typicality
5  requirement.

### 2.   Adequacy

To satisfy the adequacy requirement, plaintiffs must show that their interests are not antagonistic to those of the class and that they are able to prosecute the action vigorously through qualified and competent counsel. Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1238-39 (9th Cir. 1998). The Government argues that the Plaintiffs' claims are antagonistic because the relief sought — an injunction that would require adjudication of the class member's applications and completion of their name checks — would disrupt the FBI's current policy of completing name checks in the order in which they are received. An injunction would allow class members whose applications have been pending for shorter periods of time to "jump ahead" to the front of the line. But class treatment would not create antagonism among class members because all class members would be treated in exactly the same manner — an injunction would likely instruct USCIS to complete the name checks and adjudicate all naturalization applications by the same date certain.

The Court recognizes, however, that if certification is granted, the Court's exclusive jurisdiction over section 1447(b) petitions will sweep up and place on hold all pending individual naturalization applications falling within the proposed class, including those whose name checks are completed during the pendency of this litigation. See Hovsepian, 359 F.3d at 1161-64 (holding that 8 U.S.C. § 1447(b) provides district court with exclusive jurisdiction over naturalization applications). The Court can address this issue by allowing potential class members to opt-out of the class. The Ninth Circuit recently noted that, "a district court's discretion to include an opt-out notice is well-established." Dukes, 509 F.3d at 1189 (noting that district courts have discretion to

ORDER — 11

order notice and opt-out rights when certifying a Rule 23(b)(2) class); see also Fed. R. Civ. P. 23(d)(1)(B). Although Dukes involved a "hybrid" Rule 23(b)(2) class seeking both injunctive relief and damages, the Court nonetheless has broad discretion in fashioning appropriate relief, and may require notice and the right to opt-out under its discretionary authority provided in Rule 23(d)(1)(B). Given the potential for further delay in naturalization decisions as a result of the class action, potential members of the class may decide to opt-out and have their applications adjudicated by USCIS outside the context of this litigation.

**V.     Rule 23(b)(2)**

Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). The rule was "intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding nature, settling the legality of the behavior with respect to the class as a whole, is appropriate." Fed. R. Civ. P. 23, Comment to Subdivision (b)(2).

At least one other district court has certified a Rule 23(b)(2) class in an immigration case challenging the government's policies and practices of delay. See Santillan v. Ashcroft, No. C 04-2686 MHP, 2004 WL 2297990 (N.D. Cal. Oct. 12, 2004) (certifying under Rule 23(b)(2) a class action against USCIS based on delays in the issuance of documentation of their status as temporary or permanent lawful permanent residents due to pending background checks). In this case, the Government imposes a name check requirement that must be completed before naturalization applications can be adjudicated. Plaintiffs seek injunctive relief to end the delay and to change these national policies and practices. Plaintiffs' case thus satisfies the dual requirements of Rule 23(b)(2).

The Government argues that the class should not be certified because Plaintiffs' request for section 1447(b) relief in the form of a class-wide remand to USCIS is "impracticable,"

ORDER — 12

"insurmountable," and "would cause further delays in processing other applications, such as those for adjustment of status." (Defs.' Opp. Mot. at 3-4.) The Court recognizes that it may be the first district court to certify a class under section 1447(b).[5] However, the Government's argument confuses the question of appropriate remedy with the question of the best procedural tool for resolving common questions of law. Nothing in section 1447(b), or common sense, precludes resolving Plaintiffs' section 1447(b) or APA claims on a class-wide basis.

**Conclusion**

The Court concludes that the requirements under Rule 23(a) and (b)(2) are met and class certification is appropriate. It is hereby ORDERED that:

1. The Plaintiffs' motion for class certification is GRANTED.

2. The Court therefore CERTIFIES a class comprised of the following members:

All lawful permanent residents of the United States residing in the Western District of Washington who have submitted naturalization applications to USCIS but whose naturalization applications have not been determined within 120 days of the date of their initial examination due to the pendency of a "name check."

3. The named class representatives are Ahmad Alkabra, Mohammad Reza Aidinejad, and Zahra Abedin.

4. The counsel of named plaintiffs is counsel for the class.

5. Notice and an opportunity to opt-out shall be provided to the plaintiff class.

It is further ordered that counsel shall meet and confer and submit a proposed class notice in

---

[5] It appears that no district court has yet certified such a class; and, in many cases Plaintiffs have not sought certification under section 1447(b). See Ahamadi v. Chertoff, No. C07-03455WHA (N.D. Cal. 2008) (in class action involving name check delays, pending motion seeks class certification on claims under the APA only); Mocanu v. Mueller, No. 07-445, 2008 WL 154606, at *4-5 (E.D. Pa. Jan. 11, 2008) (granting summary judgment for plaintiffs in class action involving name check delay claims under APA only); Antonishin v. Keisler, No. 06 CV 2518, 2007 WL 2788841, at *4 (N.D. Ill. Sept. 20, 2007) (prior to Plaintiffs' motion for class certification, granting motion to dismiss putative class name check delay claims under the APA and remanding individual section 1447(b) claims to USCIS for adjudication); Yakubova v. Chertoff, No. 06-CV-3203, slip op. at 3 (E.D.N.Y. Nov. 2, 2006) (attached to Dkt. No. 13, Pls.' Resp. Mot., Ex. 4) (declining to rule on class certification involving both section 1447(b) and APA claims without the benefit of discovery; no certification motion currently pending).

ORDER — 13

1  compliance with this order within fifteen (15) days of the date of this order.

2  The clerk is directed to send copies of this order to all counsel of record.

3  Dated: April 25, 2008.

                                          s/ Marsha J. Pechman

                                          Marsha J. Pechman
                                          United States District Judge

ORDER — 14