UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROSHANAK ROSHANDEL, VAFA GHAZI-MOGHADDAM, HAWO AHMED, LIN HUANG, AHMAD ALKABRA, MOHAMMAD REZA AIDINEJAD, and ZAHRA ABEDIN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL CHERTOFF, Secretary, United States Department of Homeland Security, EMILIO GONZALES, Director, United States Citizenship and Immigration Services, ANN CORSANO, Director, District 20, United States Citizenship and Immigration Services, JULIA HARRISON, Director, Seattle Field Office, United States Citizenship and Immigration Services, ROBERT MUELLER III, Director, Federal Bureau of Investigation, MICHAEL MUKASEY, Attorney General, United States Department of Justice, and the UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. C07-1739MJP<br><br>ORDER DENYING GOVERNMENT'S MOTION TO DISMISS AND/OR REMAND |

This matter comes before the Court on the Government's Motion to Dismiss and/or Remand. (Dkt. No. 9.) Plaintiffs filed a response to the motion (Dkt. No. 13) and Defendants filed a reply (Dkt. No. 17). Having considered the parties' briefs and all documents submitted in support thereof, and having heard oral argument on the issues, the Court DENIES the Government's Motion to Dismiss and/or Remand.

ORDER — 1

## Background

This action involves delayed naturalization applications allegedly due to a pending "name check" with the Federal Bureau of Investigation ("FBI"). Named Plaintiffs are lawful permanent residents of the United States who have applied with the United States Citizenship and Immigration Services ("USCIS") to be naturalized as United States citizens. Defendants include officers in USCIS, the FBI, and other related federal agencies. Defendant Michael Chertoff is Secretary of the United States Department of Homeland Security. Emilio Gonzales is Director of USCIS. Ann Corsano is Director of District 20, USCIS, Julia Harrison is Director of the Seattle Field Office, USCIS. Robert Mueller III is Director of the FBI, and Michael Mukasey is Attorney General, United States Department of Justice. Plaintiffs also sue the United States of America.

Each Plaintiff's application has been pending for at least two years since passing his or her naturalization examination. (Dkt. No. 21, First Amended Complaint ("Compl.") ¶ 2.) Plaintiffs allege that they have met all legal requirements for naturalization. (Id. ¶ 2.) Plaintiffs allege numerous injuries resulting from their delayed naturalization applications, including the inability to participate in civic society by voting and jury service, inability to travel freely as United States citizens, and ineligibility for jobs for which they are otherwise qualified. (Compl. ¶ 67.)

On April 25, 2008, the Court certified a class comprised of the following members:

> All lawful permanent residents of the United States residing in the Western District of Washington who have submitted naturalization applications to USCIS but whose naturalization applications have not been determined within 120 days of the date of their initial examination due to the pendency of a "name check."

(Dkt. No. 28.)

## I.     The Naturalization Process

Persons seeking naturalization must submit an application to USCIS, the agency responsible for adjudicating naturalization applications. See 8 U.S.C. § 1445; 8 C.F.R. § 100.2(a)-(f); 6 U.S.C. § 291 (abolishing the Immigration and Naturalization Service). A naturalization applicant must meet certain requirements under the Immigration and Naturalization Act ("INA"),

ORDER — 2

including an understanding of the English language and history of the United States, and good moral character. 8 U.S.C §§ 1423, 1427.  USCIS is required to grant the application if the applicant meets all statutory requirements for naturalization. 8 C.F.R. § 335.3(a).

Once an application is submitted, USCIS conducts an investigation of each naturalization applicant. See 8 U.S.C. § 1446(a); 8 C.F.R. § 335.1.  Under USCIS regulations, the investigation includes a "full criminal background check" performed by the FBI. 8 C.F.R. § 335.2(b).  USCIS also conducts a naturalization interview, at which an applicant meets with a USCIS officer who asks questions and takes testimony. 8 C.F.R. §§ 335.1, 335.2(a).  At the interview, the USCIS officer is required to inform the applicant of the remedies available to the applicant under section 1447(b). 8 U.S.C. § 1446(b).  Under USCIS regulations, applicants are supposed to be interviewed only after the USCIS has received a "definitive response" from the FBI that a full background check of the applicant is complete. 8 C.F.R. § 335.2(b).[1]

The regulations require that USCIS make a decision to grant or deny the naturalization application either at the initial examination or within 120 days of the date of the initial examination. See 8 C.F.R. § 335.3(a) ("A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2.").  If USCIS fails to render a decision on a naturalization application within 120 days of the applicant's naturalization examination, the applicant may seek district court adjudication of his or her application. 8 U.S.C. § 1447(b).  The court may either determine the application, or remand the application to the agency with

---

[1] Until recently, USCIS did not follow this regulation and would conduct interviews before completing the background checks.  Apparently, USCIS now waits until background investigations are complete before conducting an applicant's examination interview. See Stepchuk v. Gonzales, No. C06-570RSL, 2006 WL 3361776, at *5 n.6 (W.D. Wash. Nov. 17, 2006) (Lasnik, C.J.) (noting that, "perhaps in response to the growing number of lawsuits that have resulted from the combination of lengthy background checks and [US]CIS's deviation from the course of action dictated in its regulation, the agency recently declared its renewed intention to conduct examinations only after receiving the results of an applicant's criminal background check").

ORDER — 3

instructions. Id. Once a plaintiff has filed a petition under section 1447(b), the district court assumes exclusive jurisdiction over the naturalization application. United States v. Hovsepian, 359 F.3d 1144, 1161 (9th Cir. 2004).

**II.     The Name Check Requirement**

Plaintiffs allege that in 2002, without promulgating any regulations and without statutory authorization, USCIS "dramatically altered the naturalization process by requiring that all applicants pass a 'name check' by the FBI before final approval." (Compl. ¶ 40.) According to the complaint, a name check is a search of FBI records and other records the FBI has access to based on the name of the applicant. (Id.) Plaintiffs allege that the name check is implemented in such a manner that an applicant may be erroneously identified as a "person of interest" to the FBI, thereby delaying adjudication of the naturalization application, even though the applicant has committed no crimes and is not a suspect, and even though the name check revealed no other information bearing on eligibility for naturalization. (Compl. ¶ 50.) Plaintiffs further allege that USCIS will not grant naturalization applications until it receives a completed background check from the FBI, and that neither USCIS nor the FBI has imposed any timeline for completion of the name checks. (Id. ¶ 52.)

**III.    The Class Action Complaint**

Plaintiffs' complaint states four causes of action:  (1) right to judicial determination of application for naturalization pursuant to 8 U.S.C. § 1447(b); (2) unreasonable delay in violation of the Administrative Procedure Act ("APA"), 8 U.S.C. §§ 555(b); (3) failure to follow notice-and-comment requirements of the APA, 8 U.S.C. § 553; and (4) failure to provide notice of remedies to certain Plaintiffs as required by 8 U.S.C. § 1446(b). Counts One, Three and Four are alleged exclusively against Defendants Chertoff, Gonzalez, Corsano, Harrison, and the United States. Count Two is alleged against all Defendants, including Mukasey, Mueller, and the United States. Under Count One, Plaintiffs ask the Court to remand class members' naturalization applications to USCIS with instructions to render a decision on each proposed class member's

ORDER — 4

naturalization application within 90 days.[2] Plaintiffs seek declaratory and injunctive relief for all remaining counts.

## Discussion

### I. Plaintiffs' Motion to Strike

As a preliminary matter, Plaintiffs move to strike portions of the Government's motion to dismiss and attached declarations as outside of the complaint and inadmissible for purposes of a Rule 12(b)(6) motion. Generally on a motion to dismiss, a court cannot consider facts outside the complaint without converting the motion to a motion for summary judgment. See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001). The Government argues that the declarations should be allowed because they bear on the Court's subject matter jurisdiction. A defendant may rely on documents outside of the complaint in a 12(b)(1) factual attack on subject matter jurisdiction without converting the motion to dismiss into a motion for summary judgment. See Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). However, the Cannon Declaration submitted by the Government does not bear on the issue of subject matter jurisdiction. Rather, this declaration and the Government's corollary arguments go to the merits of Plaintiffs' claims, in particular, whether the agency delay in processing name checks is "reasonable." Because the declarations do not form the basis of a factual attack on the Court's jurisdiction, they cannot be considered on that basis. To the extent the declarations provide grounds for Defendants to prevail on the merits, they fall outside the scope of the 12(b)(6) arguments and may only be considered in a separate motion for summary judgment.

Thus, the Court strikes the following materials: Motion to Dismiss (Dkt. No. 9), Parts III.B.3 & 4 (arguing that delay is reasonable and does not violate the APA), and III.D (arguing that applicants are currently provided notice of remedies); and Declaration of Michael Cannon (Dkt. No. 9-2) ¶¶ 4-40 (describing the name check program).

---

[2] Although the complaint asks for section 1447(b) relief in the form of either remand or naturalization, Plaintiffs stated at oral argument that, in terms of class-wide relief, they only seek remand.

**II.     The Government's Motion to Remand**

After the filing of the original complaint, the FBI completed the name checks for named plaintiffs Roshandel, Ghazi-Moghaddam, Ahmed, and Huang. In its motion, the Government indicates that USCIS is now ready to adjudicate these naturalization applications and asks the Court to remand the Count One section 1447(b) claims of these four named plaintiffs to USCIS for adjudication.

However, since the filing of the Government's motion, Plaintiffs filed an amended complaint adding three more named plaintiffs whose name checks are not yet complete.[3] And in a separate order, the Court certified a class under both the APA and section 1447(b), and provided for an opt-out notice for current and future plaintiffs who wish to individually seek remand or court adjudication of their naturalization applications. (Dkt. No. 28.) Given these developments, the Government's arguments regarding remand are no longer applicable and the remand request is denied.[4]

**III.    The Government's Motion to Dismiss**

The Government moves to dismiss Counts Two, Three, and Four for failure to state a claim upon which relief can be granted.

**A.     Legal Standard**

A motion to dismiss should be granted only if the complaint fails to set forth facts sufficient to establish grounds for federal subject matter jurisdiction or a plausible right to relief. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). The complaint is construed in the

---

[3]    Since oral argument, the Government has requested permission to apprise the Court of the status of the name checks for the remaining named plaintiffs. (Dkt. No. 25.) Because that request to consider additional material does not ripen until May 9, 2008, the Court has not yet ruled on whether to consider the additional material and so does not consider it here.

[4]    Prior to oral argument, Defendants submitted a Supplemental Motion to Dismiss and/or Remand (Dkt. No. 22), and the Supplemental Declaration of Susan Walk (Dkt. No. 23) with an attached exhibit discussing the USCIS and FBI plan to eliminate the backlog of name checks. To the extent the Government suggests that this plan moots Plaintiffs claims, a letter discussing USCIS and the FBI's plan to eliminate the backlog of name checks does not moot this case.

ORDER — 6

light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. Everest & Jennings, Inc., v. Am. Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994).

**B.      Unreasonable Delay under the APA**

Plaintiffs allege that all Defendants have unreasonably delayed the processing of their naturalization applications, in violation of the APA. The APA requires that an agency, "[w]ith due regard for the convenience and necessity of the parties... and within a reasonable time," shall "conclude a matter presented to it." 5 U.S.C. § 555(b). The APA authorizes suit by "[a] person suffering legal wrong because of agency action." 5 U.S.C. § 702. "Agency action" is defined to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13) (emphasis added). The APA permits a "reviewing court [to] compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C.§ 706(1). The district court may also hold unlawful and set aside agency action that is found to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A); "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C); or "without observance of procedure required by law," 5 U.S.C. § 706(2)(D).

Defendants argue that Plaintiffs fail to state a claim in Count Two because: (1) section 1447(b) provides an adequate remedy for undue delay in naturalization applications; (2) neither USCIS nor the FBI has a duty to decide applications within a particular time frame; and (3) the delay is reasonable as a matter of law.

**1.      The jurisdiction granted in section 1447(b) of the INA does not preclude the Court's review of agency delay under the APA.**

The APA provides a right to judicial review of all "final agency actions for which there is no other adequate remedy in court." 5 U.S.C. § 704. "When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies." Bowen v. Massachusetts, 487 U.S. 879, 903 (1988);

ORDER — 7

see also 5 U.S.C. § 704.  This exception to judicial review under the APA was intended to avoid duplication and is narrowly construed.  <u>Bowen</u>, 487 U.S. at 903; <u>see also</u> <u>Sze v. INS</u>, No. C-97-0569 SC, 1997 WL 446236, at *5 n.3 (N.D. Cal. July 24, 1997) (finding that, consistent with this narrow construction, jurisdiction under the APA is not statutorily precluded by section 1447(b) of the INA).

Defendants argue that Plaintiffs' unreasonable delay claim fails as a matter of law because Plaintiffs already have a remedy for administrative delays under 8 U.S.C. § 1447(b).  Plaintiffs respond that relief under section 1447(b) is not adequate because they seek to remedy "institutional" delays in the system, not only the delay for any particular application.  Plaintiffs also suggested at oral argument that they should be allowed to move forward on both claims in the alternative.

The relief requested by Plaintiffs under the APA is not duplicative of that available to them under section 1447(b).  Without the APA, Plaintiffs cannot obtain a declaration of the unlawfulness of the policy and practice of delaying these naturalization applications.  Further, 8 U.S.C. § 1447(b) does not on its face reach the FBI.  Thus, the Court concludes that Plaintiffs' "unreasonable delay" APA claims against both USCIS and the FBI are not duplicative of Plaintiffs' claims under section 1447(b), and Plaintiffs may proceed with both claims.

**2. Defendants' alleged unlawful actions were legally required, and therefore subject to the Court's review.**

The "only agency action that can be compelled under the APA is action legally required." <u>Norton v. So. Utah Wilderness Alliance</u> ("SUWA"), 542 U.S. 55, 63 (2004).  "Thus, a claim under 5 U.S.C. § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." <u>Id.</u> at 64.  The question here is whether USCIS or the FBI has a duty to act in this case.[5]

---

[5]   The parties dispute whether the Government's arguments bear on the Court's jurisdiction or on whether the Complaint states a claim.  Because the Court has already concluded that the Government's materials do not raise a factual attack on jurisdiction, whether the Court

ORDER — 8

### i. USCIS has a mandatory duty to act.

Defendants argue that USCIS is not under any mandatory duty to act within a particular time frame because 8 U.S.C. § 1447(b) does not establish a deadline for agency action. Defendants ignore the duty to adjudicate and the mandatory time frame set out in USCIS's regulations. 8 C.F.R. § 316.14(b)(1) provides that "the employee of the Service who conducts the examination under paragraph (a) of this section <u>shall</u> determine whether to grant or deny the application...." (Emphasis added). 8 C.F.R. § 335.3(a) states that a "decision to grant or deny the application <u>shall</u> be made at the time of the initial examination or within 120-days after the date of the initial examination of the application for naturalization." (Emphasis added). Agency regulations with the force of law can serve as the basis for finding a mandatory duty underlying an APA action. <u>See</u> <u>SUWA</u>, 542 U.S. at 65. The agency's regulations provide a sufficient basis for alleging that USCIS has a mandatory duty to act within 120 days of the interview. <u>See</u> <u>Zagrebelny v. Frazier</u>, Civil No. 07-1682 (PAM/JSM), 2008 WL 624072, at *5 (D. Minn. March 4, 2008) (concluding that 8 C.F.R. §§ 316.14(b)(1) and 335.3(a) create a nondiscretionary duty on the part of USCIS to adjudicate their naturalization applications within 120 days of the interview).

Defendants rely on the district court's holding in <u>Mustafa v. Pasquerell</u>, No. Civ.SA05CA-658-XR, 2006 WL 488399, at *5 (W.D. Tex. Jan. 10, 2006), in which the court dismissed plaintiff's APA and mandamus claims, holding that the pace at which adjustment of status applications are processed by USCIS is discretionary. However, <u>Mustafa</u> is inapposite here because adjustment of status petitions are not governed by the time frame set out in 8 C.F.R. § 335.3(a). The Government also argues the even if there is a mandatory duty, the 120 days have not yet passed because USCIS interprets "examination" in 8 C.F.R. § 335.3(a) to mean the full background check process, not just the naturalization interview. Under Defendants' interpretation, the 120-day clock does not begin to run until the name check and all other

---

analyzes the issue of duty as a question of jurisdiction or in the context of whether the complaint states a claim is immaterial. Under either approach, the legal standard and the result are the same.

ORDER — 9

background checks are complete. The Court has already rejected this position and will not reconsider it here. See Weir v. Gonzales, No. C07-0074MJP, 2007 WL 1430109, at *2 (W.D. Wash. May 14, 2007) (concluding that the statute and accompanying regulations use the term "examination" to refer to the interview date, not the entire process of conducting the interview and completing the background checks); see also Walji v. Gonzales, 500 F.3d 432, 436 (5th Cir. 2007) ("We agree... that a thorough reading of 8 C.F.R. § 335.2 reveals that the regulation can only be understood as equating 'examination' with the 'interview' conducted by the Service officer.") (citation and internal quotation marks omitted).

Finally, in its reply brief, the Government argues for the first time that the language of 8 C.F.R § 335.3(a) is "superseded" by 1997 funding legislation in which Congress mandated that USCIS may not adjudicate a naturalization application until completion of a full criminal background check by the FBI. See Pub. L. No. 105-119, 111 Stat. 2448 at *2449 (Nov. 26, 1997) (codified at 8 C.F.R. § 335.2(b)); see also Antonishin v. Keisler, No. 06 CV 2518, 2007 WL 2788841, at *5 (N.D. Ill. Sept. 20, 2007) (concluding that USCIS does not have a mandatory duty to adjudicate applications within 120 days because under 8 C.F.R. § 335.2(b), USCIS has no duty to act until it receives a response from the FBI). However, the appropriations bill simply states that funds appropriated to USCIS cannot be used to adjudicate naturalization applications until a "full criminal background check" is completed by the FBI. Defendants cite no legal authority for the suggestion that the agency's statutory obligation to wait for a "definitive response" from the FBI changes the agency's regulatory obligation under 8 C.F.R. § 335.3(a) to decide the application within 120 days of the interview. The Court sees no reason to assume that the 1997 funding legislation changed the regulatory landscape in the way Defendants suggest.

In sum, the regulations impose a nondiscretionary duty on USCIS to adjudicate naturalization applications within 120 days of the applicant's interview.

### ii. The FBI has a mandatory duty to act.

The Government argues that the FBI has no mandatory duty to conduct background checks in relation to Plaintiffs' naturalization applications, let alone complete the background

ORDER — 10

checks requested by USCIS within a particular time frame. It is true that no statute or regulation dictates a time frame in which the FBI must complete the name checks. But the APA itself provides the time frame — all agencies subject to the APA must conclude matters presented to them in a "reasonable" amount of time. 5 U.S.C. § 555(b).[6] Thus, if there is a mandatory duty to act, the APA prevents the FBI from delaying indefinitely.

Moreover, no single statute or regulation, standing alone, expressly imposes a mandatory duty on the FBI to perform background checks. However, legislative intent may be revealed in the plain language of a single enactment, or as is often the case, by examining a legislative scheme as a whole. See Block v. Cmty. Nutrition Inst., 467 U.S. 340, 349 (1984). Thus, an agency's mandatory duty to act may be expressed from several Congressional enactments which, read together, imply a mandatory duty. This is the approach endorsed in Kaplan v. Chertoff, 481 F. Supp. 2d. 370 (E.D. Pa. 2007), and followed by a number of other district courts that have concluded that the FBI has an implied mandatory duty to complete the name checks in a reasonable amount of time.[7]

---

[6] This conclusion is supported by cases in which courts have analyzed whether agency delay is reasonable under the APA even in the absence of a statutory timetable for agency action. For example, neither Telecomms. Research & Action v. FCC ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984), the case articulating the six "TRAC" factors for determining when agency delay is unreasonable, nor any of the cases the court relied on in discerning the factors, involved agency inaction in the face of a mandatory statutory deadline. See also Pub. Citizen Health Research Group v. Chao, 314 F.3d 143, 152-53 (3rd Cir. 2002) (compelling agency under 5 U.S.C. § 706(1) to proceed with rulemaking although enabling legislation set no specific deadline for agency to do so). These cases instead rely on the "reasonable" time frame imposed by the APA.

[7] See Moretzapour v. Chertoff, No. C07-4264 BZ, 2007 WL 4287363, at *1 n.7 (N.D. Cal. Dec. 5, 2007) (citing Kaplan with approval and "respectfully disagreeing" with cases holding that the FBI does not have a mandatory duty to complete a background check); Zagrebelny, 2008 WL 624072, at *5 n.4 (relying on reasoning in Kaplan to deny motion to dismiss unreasonable delay claim against FBI); Al Daraji v. Monica, No. 07-1749, 2007 WL 2994608, at *3-5 (E.D. Pa. Oct. 12, 2007) (same); Dawoud v. Dep't of Homeland Sec., No. 3:06-CV-1730-M (BH), 2007 WL 4547863, at *6 (N.D. Tex. Dec. 26, 2007) (same). But see Antonishin, 2007 WL 2788841, at *6-7 (reasoning that the court should not "infer such a duty [for the FBI] based on an appropriations measure directed to a different agency [, USCIS]."); Shalabi v. Gonzales, No. 4:06CV866 RWS, 2006 WL 3032413, at *5 (E.D. Mo. Oct. 23, 2006) (same).

ORDER — 11

In Kaplan, the district court concluded that the FBI had an implied mandatory duty to complete the background checks. The court reasoned that such a duty must follow from the 1997 funding legislation and the implementing regulations that injected the FBI into the naturalization process by requiring that the FBI conduct a full criminal background check of a naturalization applicant before the USCIS can complete its adjudication of the application. See Pub. L. No. 105-119, 111 Stat. 2448 (Nov. 26, 1997); see also 8 C.F.R. § 335.2(b). Other regulations require applicants to submit their fees to USCIS; in turn, USCIS provides a portion of the fees to the FBI to complete the fingerprint and name checks. 8 C.F.R § 334.2; see also 72 Fed. Reg. 4888, 4889 (proposed Feb. 1, 2007) (proposing increased fees for applicants based, in part, to "costs due to the FBI for background checks"). As the court in Kaplan explained, "where Congress has conditioned [US]CIS's mandatory action on the FBI's completion of background checks, and where applicants must pay the FBI, through [US]CIS, to complete the background checks, . . . Congress has, by implication, imposed on the FBI a mandatory duty to complete the background checks." 481 F. Supp. 2d at 401.

The Court agrees with the analysis in Kaplan and concludes that by virtue of its statutory and regulatory role in the naturalization process, the FBI has an implied mandatory duty to process name checks. Other courts' conclusions to the contrary are not binding on this Court.

**3.     The time required to complete a name check is not per se reasonable.**

Finally, the Government argues that the delay of USCIS and the FBI in adjudicating Plaintiffs' applications is reasonable. Not only does this merit-based argument fall outside the scope of this motion, but when measured against the 120-day deadline for USCIS to act, see 8 C.F.R. § 335.3(a); 8 U.S.C. § 1447(b), a two to three year deadline cannot be deemed per se reasonable. Ultimately, deciding what constitutes a reasonable time frame to act requires factual analysis. The Government's arguments and declarations regarding this issue are stricken as outside the scope of this motion. The Court concludes that Plaintiffs have successfully stated claims under the APA against all Defendants for failing to complete the name checks and adjudicate applications in a reasonable amount of time.

ORDER — 12

## C. Failure to Follow Notice and Comment Requirements of APA

Plaintiffs allege in Count Three that Defendants Chertoff, Gonzalez, Corsano, Harrison, and the United States unlawfully failed to follow the notice and comment requirements of the APA when implementing the name check policy. The APA generally requires that agency rules be promulgated after notice to and comment from the public. See 5 U.S.C. § 553. However, unlike "substantive" rules subject to these procedural requirements, "interpretive rules" or "general statements of policy" do not need to undergo notice and comment rulemaking procedures. 5 U.S.C. § 553(b)(3)(A). Whether a rule is interpretive or substantive is a legal question, and the distinction between these two categories of rules is not crystal clear. Gunderson v. Hood, 268 F.3d 1149, 1155 (9th Cir. 2001). Generally speaking, interpretive rules are defined as "horatory and instructional," which "merely clarify or explain existing law or regulations." Alcaraz v. Block, 746 F.2d 593, 614 (9th Cir. 1984). In contrast, a substantive rule is one that modifies existing individual rights and obligations or effects a change in existing law or policy. W.C. v. Bowen, 807 F.2d 1502, 1504 (9th Cir. 1987).

Plaintiffs do not attach an actual written "name check" policy to their complaint. Plaintiffs allege that: (1) USCIS will not decide a naturalization application until it receives a completed name check from the FBI (i.e., it is a prerequisite to naturalization); (2) this name check policy is a change in USCIS policy; and (3) USCIS promulgated this change in policy without promulgating any regulations and without explicit statutory authorization.

The Government argues that the Court should decide as a matter of law that the policy is interpretive and therefore not subject to the APA's notice and comment requirements. Although additional facts are contained in the Cannon Declaration, that material is outside the scope of the motion to dismiss and has been stricken. To decide whether the alleged policy is interpretive or substantive, the Court needs the benefit of a more fully developed record. Because the Court cannot decide this issue on the basis of Plaintiffs' complaint, the Government's motion to dismiss this claim is denied without prejudice.

### D. Failure to Provide Notice of Remedies

Plaintiffs allege that Defendants Chertoff, Gonzales, Corsano, Harrison, and the United States failed to give notice of remedies available under section 1447(b) to certain members of the class, including named plaintiffs Roshandel and Ghazi-Moghaddam. Under 8 U.S.C. § 1446(b), the USCIS officer "shall, at the examination, inform the applicant of the remedies available to the applicant under section 1447 of this title." Plaintiffs ask the Court to declare Defendants' failure to give this notice unlawful, and to enjoin the unlawful conduct. In their brief, Defendants concede that before January 14, 2005, the form that USCIS provided to applicants at their examination did not contain the required notice of remedies, and that Plaintiffs Roshandel and Ghazi Moghaddam were interviewed prior to that date. (Dkt. No. 9, Mot. to Dismiss at 16.)

Defendants argue that even assuming USCIS failed to give notice, the error is harmless because Plaintiffs have not alleged harm resulting from the alleged failure to provide notice. But harm is inherent in the agency's failure to give notice — an individual who is not aware of his or her remedies simply cannot act on them and may languish indefinitely without recourse. Defendants also allege that Plaintiffs Ahmed and Huang received revised N-652 forms at their interviews, and presumably, notice of their remedies. But the fact that some of the named plaintiffs received this notice does not negate the harm suffered by others who did not. As Plaintiffs make clear in their complaint, only a subclass of Plaintiffs will maintain this claim.

Finally, Defendants ask the Court to dismiss this claim because USCIS now complies with the statutory requirements, making declaratory relief unwarranted. (Dkt. No. 10, Walk Decl., Ex. 1.) However, whether USCIS did in fact gave these Plaintiffs and future plaintiffs notice of the remedies available to them under section 1446(b) at their interview is a disputed issue of fact that cannot be decided in a motion to dismiss. The fact that USCIS failed to give some Plaintiffs notice of their remedies is sufficient to state a claim for relief under 8 U.S.C. § 1446(b). The Government's motion to dismiss this claim is denied.

### E. Injunctive Relief

Finally, Defendants argue that Plaintiffs have failed to state a claim for which injunctive

ORDER — 14

1  relief can be granted because "Plaintiffs must establish actual success on the merits, and that the
2  balance of equities favors injunctive relief." (Dkt. No. 9, Mot. to Dismiss at 18.)  The
3  Government erroneously assumes that the Plaintiffs ask for a <u>preliminary</u> injunction.  The
4  traditional four-factor test applied when considering appropriateness of permanent injunctive relief
5  requires the prevailing party to demonstrate "(1) that it has suffered an irreparable injury; (2) that
6  remedies available at law... are inadequate to compensate for the injury; (3) that, considering the
7  balance of hardships between the plaintiff and defendant, a remedy of equity is warranted; and (4)
8  that the public interest would not be disserved by a permanent injunction."  <u>eBay Inc., v.</u>
9  <u>MercExchange, L.L.C.</u>, 126 S. Ct. 1837, 1839 (2006).  The appropriateness of the remedy need
10 not be analyzed by the Court unless and until Plaintiffs prevail.  Moreover, the last two elements
11 — balance of hardships and public interest implications — require the benefits of discovery.  The
12 Government's motion to dismiss the claim for injunctive relief is premature and therefore denied.
13 //
14 //
15 //
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //

ORDER — 15

**Conclusion**

Plaintiffs seek relief from delay in the processing of their naturalization applications. The Government has moved to dismiss and/or remand Plaintiffs' claims under 8 U.S.C. §§ 1447(b) and 1446(b), and the APA. The Court GRANTS in part Plaintiffs' motion to strike the following materials as outside the complaint: Motion to Dismiss, Parts III.B.3 & 4 and III.D; and Declaration of Michael Cannon (Dkt. No. 9-2) ¶¶ 4-40. Furthermore, the Court DENIES the Government's Motion to Remand and DENIES the Government's Motion to Dismiss. The clerk is directed to send copies of this order to all counsel of record.

Dated: May 5, 2008.

 s/ Marsha J. Pechman

Marsha J. Pechman
United States District Judge

ORDER — 16